UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE ALBERTO RAMIREZ GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| UNITED STATES CITIZENSHIP AND | ) | 3:21-CV-2233-G |
| IMMIGRATION SERVICES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See* Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") (docket entry 4). For the reasons stated below, the motion is granted.

## I.  BACKGROUND

### A.  Factual Background

This is an immigration case. The plaintiff, Jose Alberto Ramirez Garcia ("Ramirez"), is "a native and citizen of Mexico[]" who "currently resides in Dallas, Dallas County, Texas with his U.S. citizen wife and three U.S. citizen children."

Plaintiff's Complaint for Injunctive, Declaratory and Mandamus Relief ("Complaint") (docket entry 1) ¶ 2.  The defendants include United States Citizenship and Immigration Services ("USCIS"), Ur M. Jaddou, as Director of USCIS, and Wilhelm F. Bierman, as USCIS Field Office Director (collectively, "the defendants" or "the government").  See id. ¶¶ 3-5.

On or about September 16, 2019, Ramirez filed a Form I-485 application to register permanent residence or adjust status, as well as a Form I-765 application for employment authorization, with USCIS.[1]  See id. ¶¶ 16, 20 (citations omitted).  Also on or about September 16, 2019, Ramirez's United States citizen wife, Magally Lopez ("Lopez"), filed a Form I-130 petition to classify Ramirez as an "immediate relative" of a United States citizen spouse "under 8 U.S.C. § 1154(a)(1)(A)."  Id. ¶¶ 16-17 (citations omitted); see also id., Index of Exhibits to Plaintiff's Original Complaint ("Exhibits"), at 43-45 (USCIS receipts of Ramirez and Lopez's submitted forms).[2]

---

[1]      Ramirez filed his Form I-485 application to register permanent residence or adjust status "pursuant to § 245(a) of the Immigration and Nationality Act ('INA')."  *Puente v. Renaud*, 3:21-CV-1103-B, 2021 WL 5326461, at *1 (N.D. Tex. Nov. 15, 2021) (Boyle, J.) (citation omitted); *see* Complaint ¶¶ 8-12 (describing applications for adjustment of status under § 245(a)).  "The INA provides the Attorney General discretion to adjust the status of an I-485 applicant if the applicant 'was inspected and admitted or paroled into the United States' and other conditions for adjustment are met."  *Puente*, 2021 WL 5326461, at *1 (quoting 8 U.S.C. § 1255(a)).

[2]      When citing to the exhibits attached to Ramirez's complaint, the court (continued...)

On August 31, 2020, the "[d]efendants issued [an] approval notice of Mr. Ramirez's I-765 application[.]" *Id*. ¶ 20 (citation omitted).  Ramirez and Lopez then "attended [an] interview on October 20, 2020," that the "[d]efendants scheduled . . . to consider and . . . adjudicate the merits of the I-130 petition and I-485 application." *Id*. ¶¶ 21-22 (citation omitted).  During this interview, an immigration officer "inquired . . . into the details of Mr. Ramirez's claimed entry to the United States[,]" and Ramirez "recounted that he clearly remembered being nervous when he entered the United States on foot with his friends, and that when he took an hours-long bus ride from Laredo to Dallas, he remembered being forced to sit on the only unoccupied seat on the bus, which happened to be right next to a smelly bathroom." *Id*. ¶ 22.  Following this interview, the "[d]efendants request[ed] that [Ramirez] appear" for a second interview on October 30, 2020. *Id*. ¶ 24 (citation omitted); see also *id*., Exhibits, at 53 (notice of second interview, with "Reason for Appointment" being given as "Complete I485 PROCESSING").  Ramirez attended this second interview "[o]n October 30, 2020, . . . [and] answered questions regarding his manner of entry under penalty of perjury." *Id*. ¶ 25 (citation omitted). Then, "[o]n December 8, 2020, Mr. Ramirez received the decision from Defendants

---

[2](...continued)
uses the numbers attached to the complaint and attached exhibits by the electronic filing system.  In contrast, when citing to Ramirez's complaint, the court cites to the relevant paragraphs in the complaint.

denying his I-485 application because he had not satisfied his burden of proving that his last entry into the United States was procedurally regular[.]"  *Id.* ¶ 26 (citation omitted).  In its decision, USCIS stated that Ramirez's "affidavit and testimony at the time of interview detail two vastly different admission scenarios[,]" and that, "therefore, [Ramirez] ha[d] not presented a credible record of [his] claimed admission into the United States."  *Id.*, Exhibits, Decision of USCIS Regarding Ramirez's I-485 Application ("Denial of Ramirez's I-485 Application") at 57.

On January 2, 2021, Ramirez filed a Form I-290B notice of appeal or motion with USCIS.  See *id.* ¶ 27 (citation omitted).  The "[d]efendants[] dismissed Mr. Ramirez's I-290B and affirmed the denial of his I-485 application[]" on April 6, 2021.  *Id.* ¶ 28 (citation omitted).  With respect to USCIS's consideration of Ramirez's Form I-290B, the government avers that USCIS "believed that [Ramirez] had provided two separate and contradictory explanations for his admission to the United States in his sworn statement, which was taken during his second USCIS interview and which Ramirez Garcia signed as true and correct, as the sworn statement indicated both that he crossed the border on foot and that he crossed the border on a bus."  Motion to Dismiss at 5 (citations omitted).  In addition, "even assuming Ramirez Garcia's explanation was true," USCIS "also found" that certain elements of Ramirez's purported admission to the United States were "unlikely[.]"  *Id.* (citation omitted).  Based on these conclusions, "USCIS determined that Ramirez

Garcia had not met his burden to demonstrate that his entry into the United States was procedurally regular, nor had he provided any secondary evidence to support his claim[,]" and, accordingly, USCIS "affirmed" its "original decision to deny his application to adjust status[.]"  *Id*. (citation omitted); *see also* Complaint ¶ 28 (describing "Defendants' dismiss[al] [of] Mr. Ramirez's I-290B").

Then, on May 10, 2021, Ramirez filed a second Form I-290B, in support of which Ramirez included the results of a polygraph examination that he undertook following the denial of his first Form I-290B.  Complaint ¶ 29 (citation omitted).  On July 14, 2021, the "[d]efendants . . .  issu[ed] . . . a denial notice" regarding this second Form I-290B.  *Id*. ¶ 30 (citation omitted).  In this second denial notice, USCIS provided several reasons in support of its denial of Ramirez's second Form I-290B.  *Id*. ¶ 31; *see also* Motion to Dismiss at 6-7 (describing USCIS's denial of Ramirez's second Form I-290B).  "First," USCIS reasoned, Ramirez's "motion was untimely, as it was filed more than 150 days after his application for adjustment of status was denied."  Motion to Dismiss at 6 (citation omitted); *see* Complaint ¶¶ 31-33 (citations omitted) (describing USCIS's determination that Ramirez's motion was untimely and averring that this determination was in "blatant disregard of its own agency policy[]").  "Second," the government avers "USCIS would not re-entertain the same grounds argued by Ramirez Garcia in his prior motion as part of a new motion to reconsider, particularly as Ramirez Garcia's principal evidence

- 5 -

that his entry into the United States was procedurally regular was simply his own statement that his entry into the United States was procedurally regular." Motion to Dismiss at 6 (citation omitted). Finally, USCIS concluded that, "although Ramirez Garcia did present new evidence as required for a motion to reopen, the evidence 'did not constitute new and material facts, affidavits, or other documentary evidence,' as much of the evidence had already been provided to USCIS or constituted testimony from Ramirez Garcia, his wife, and his counsel that had 'low probative value' or was already included in Ramirez Garcia's previous sworn statement." *Id*. at 6-7 (citation omitted); *see* Complaint ¶¶ 34-36 (describing USCIS's conclusions regarding the probative value and "evidentiary weight" of the evidence Ramirez submitted in support of his second Form I-290B, as well as USCIS's determination that Ramirez's "polygraph results [were] unreliable[]") (citations omitted).

Removal proceedings were initiated against Ramirez on November 16, 2021, when USCIS served Ramirez with a Notice to Appear ("NTA"). *See* Motion to Dismiss at 8 n.3 ("USCIS served Ramirez Garcia on November 16, 2021, with a Notice to Appear . . . initiating removal proceedings under 8 U.S.C. § 1229.") (citation omitted); Appendix in Support of Motion to Dismiss (docket entry 5) at 4 (declaration of Section Chief for USCIS in Dallas, Texas, that "[o]n November 16, 2021, USCIS issued an NTA to . . . Ramirez"); Plaintiff's Opposition to Defendants' Motion to Dismiss ("Response to Motion to Dismiss") (docket entry 7) at 2, 5

(citations omitted) (averring that "Defendants have effectively issued a Notice To Appear . . . against Mr. Ramirez," and acknowledging "Defendants' mailing a Notice To Appear . . . to the Executive Office For Immigration Review" and "the issuance of an NTA issued against Mr. Ramirez"); *see* Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Complaint ("Reply in Support of Motion to Dismiss") (docket entry 9) at 1 (citations omitted) (stating that "removal proceedings" against Ramirez "have already begun"); *see also* 8 U.S.C. § 1229(a) (under section entitled "Initiation of removal proceedings[,]" describing a "Notice to appear").[3]

## B.   Procedural History

Ramirez initiated this action on September 20, 2021, by filing a complaint against the defendants in the Dallas Division of the United States District Court for

_____

[3]      The court notes that Ramirez avers that the government has yet to "read and comply with the regulations by actually filing the NTA with the proper immigration court,"  Response to Motion to Dismiss at 3 (citations omitted), and that the government's "submission of the Declaration of Joann Stewart is self-serving and holds no evidentiary value because it is well-established that the administrative agencies charged with administering the immigration laws of the United States do not observe the mailbox rule[,]" *id*. at 5 (citations omitted).  The court further notes that Ramirez contends that "he is not currently in removal proceedings[.]"  *Id*. at 7.  However, Ramirez does not deny that he has been served with an NTA.  See *id*. (emphasis added) ("Defendants' multiple denials of [Ramirez's] I-485 application . . . constitutes [sic] final agency action *which has resulted in the issuance of a NTA against Mr. Ramirez.*").  The court therefore concludes that removal proceedings against Ramirez have been initiated.  See *Crane v. Napolitano*, 3:12-CV-03247-O, 2013 WL 1744422, at *3 n.4 (N.D. Tex. Apr. 23, 2013) (O'Connor, J.) (citing 8 U.S.C. § 1229; 8 C.F.R. § 239.1) ("An NTA is a legal document that initiates removal proceedings against an alien.").

the Northern District of Texas. *See generally* Complaint. In Ramirez's complaint, he

"seeks judicial review of Defendants' final decision to deny his Form I-485 . . .

because the basis of the denial . . . amounts to a new evidentiary rule . . . without

good cause in violation of the Administrative and Procedure Act . . . 5 U.S.C.

§ 706(2)(D); constitutes an arbitrary and capricious agency action that is also an

abuse of discretion and otherwise not in accordance with the law, in violation of the

APA, 5 U.S.C. § 706(2)(A) and denies Mr. Ramirez due process of law guaranteed by

the Fifth Amendment to the United States Constitution; and does not conform with

the applicable law, a duty owed to Mr. Ramirez that Defendants must perform, in

violation of 28 U.S.C. § 1361." *Id*. ¶ 1; see also *id*. ¶¶ 45-61 (describing Ramirez's

"First Cause of Action – Administrative Procedure Act[,]" "Second Cause of Action –

Administrative Procedure Act[,]" and "Third Cause of Action – Mandamus Act").

The defendants filed a motion to dismiss for lack of jurisdiction on December

16, 2021. *See* Motion to Dismiss. Ramirez then filed a response to the defendants'

motion to dismiss on December 27, 2021. *See* Response to Motion to Dismiss. On

January 4, 2022, the defendants filed a reply in support of their motion to dismiss.

*See* Reply in Support of Motion to Dismiss. The defendants' motion is therefore fully

briefed and ripe for determination.

- 8 -

## II.  ANALYSIS

### A.  Legal Standard

Federal courts are courts of limited jurisdiction.  See *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994); *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States.  *See* U.S. CONST. art. III §§ 1-2; see also *Kokkonen*, 511 U.S. at 377.  Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court.  *United States v. Hays*, 515 U.S. 737, 743 (1995); *McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 189 (1936); *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994).

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter.  *See* FED. R. CIV. P. 12(b)(1).  A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim."  *Moran v. Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgras AG v.*

*Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted).

On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413). The court's lack of subject matter jurisdiction may be asserted at any time, either in the answer, or in the form of a suggestion to the court prior to final judgment. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d. ed. 2004). A Rule 12(b)(1) motion must be made prior to service of the responsive pleading. *Id*. An untimely Rule 12(b)(1) motion will be treated as a suggestion that the court lacks jurisdiction. *Id*. Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

## B. Application

The government avers that Ramirez "has not and cannot demonstrate that there is subject-matter jurisdiction for this proceeding." Motion to Dismiss at 1. In support of this averment, the government makes three arguments: (1) "despite Ramirez Garcia's arguments to the contrary, USCIS's decision to deny his adjustment of status application is not a final agency action reviewable under the APA, as he can renew his request for an adjustment of status during removal proceedings[]"; (2) "Congress, via the Immigration and Nationality Act[4] . . . has stripped the federal judiciary of jurisdiction to review immigration decisions left to USCIS's discretion by federal law – including adjustment of status applications[]"; and (3) "while Ramirez Garcia attempts to assert jurisdiction under the APA, 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus), and 28 U.S.C. § 1651 (the All Writs Act), these statutes fail to support jurisdiction due to the INA's restriction of judicial review for discretionary immigration decisions." *Id*. (emphasis omitted). The court considers these three arguments below.

---

[4] The court refers to the Immigration and Nationality Act as the "INA" in this opinion.

- 11 -

1.  <u>Whether USCIS's Denial of Ramirez's I-485 Application
is a Reviewable Final Agency Action</u>

The government avers that an "[a]gency action is only reviewable under the

APA when it is final, meaning 'there is no other adequate remedy in a court.'" *Id*. at

8 (quoting 5 U.S.C. § 704).  The government further argues that "USCIS's decision

to deny Ramirez Garcia's application to adjust status is not a final agency decision, as

Ramirez Garcia can renew his request for an adjustment of status in removal

proceedings." *Id*. (citations omitted).

In support of this argument, the government discusses the "detailed statutory

process for judicial review" that applies to "an alien's claim to remain in the United

States." *Id*. at 9.  Per this process, "[i]f USCIS denies an application for adjustment

of status, nothing bars the alien from filing a new application with USCIS if the alien

still has not been placed in removal proceedings." *Id*. (citing 8 C.F.R.

§ 103.2(b)(15)).  If an "alien is later placed in removal proceedings, he may renew

the application to adjust status before the immigration judge[,]" and the government

contends that, "[i]f USCIS previously denied an adjustment application, USCIS's

decision has no preclusive effect in the removal proceeding and does not limit the

immigration judge's ability to reach a different determination and grant adjustment

of status." *Id*. (citing 8 C.F.R. § 1245.2(a)(5)(ii)).  "If the immigration judge denies

the adjustment application and orders the alien's removal, the alien may appeal to

the Board of Immigration Appeals . . . as a matter of right[,]" *id*. at 9-10 (citing 8

- 12 -

C.F.R. §§ 1003.1(b), 1003.3), and the government avers that, "[i]f the Board affirms the immigration judge's order of removal (and the order denying the adjustment of status application), that order becomes administratively final for purposes of judicial review[,]" *id*. at 10 (citing 8 U.S.C. § 1101(a)(47)(B)).  The government further avers that an "alien can then raise any colorable statutory and constitutional claims by filing a timely petition for review in the court of appeals[,]" *id*. (citing 8 U.S.C. § 1252(a)(1)), and that, "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of an order of removal*[,]" *id*. (emphasis in original) (quoting 8 U.S.C. § 1252(a)(5)).  The government argues that "courts have repeatedly held that there is no subject-matter jurisdiction to review USCIS's denial of an application for adjustment of status as there is no final agency action yet within the meaning of the APA[,]" *id*. (citations omitted), and that "[t]his principle applies even when removal proceedings have not yet commenced, and even though they may never take place[,]" *id*. at 11 (citations omitted).  The government contends that, "[a]s Ramirez Garcia has not yet exhausted his administrative remedies, the Court does not have subject-matter jurisdiction over his claims."  *Id*. at 12 (citations omitted).

In response, Ramirez offers several arguments.  First, Ramirez contends that "Defendants' [sic] denied Mr. Ramirez's I-485 application three times on the same

legal basis even though he filed additional secondary evidence every time[,]" and

that, "[c]onsequently, Defendants' three denials of Mr. Ramirez's I-485 application is

[sic] final agency action that is [sic] also ripe for judicial review because he has felt

the effects of the challenged agency action immediately and in a concrete way."

Response to Motion to Dismiss at 2 (citing *McNary v. Haitian Refugee Center, Inc.*, 498

U.S. 479, 483-84 (1991)).  To that end, Ramirez avers that his "ability to provide for

his family through gainful means is at peril[,]" and that "the denial of Mr. Ramirez's

I-485 application – the cause of action in the instant matter – effectively terminates

his ability to maintain lawful employment[,] [which] means that the denial of Mr.

Ramirez's I-485 application automatically places him where he was previously (*i.e.*,

without legal presence and no valid work authorization)."  *Id.* at 2, 3.

Ramirez also argues that "[t]he APA's finality requirement does not focus on

whether Mr. Ramirez can apply for adjustment of status through a different

agency[,]" and that, instead, "finality under the APA focuses on what the agency did

(*i.e.*, the agency action) that harmed Mr. Ramirez."  *Id.* at 6-7.  Ramirez asserts that

"the challenged agency action has immediately affected Mr. Ramirez in an actual and

concrete way –  his ability to maintain lawful employment solely depends on the

instant action and Defendants' [sic] have effectively issued an NTA against Mr.

Ramirez[,]" which, Ramirez avers, "legal consequences flow from."  *Id.* at 2, 7.

Ramirez contends that, "[a]lthough he is not currently in removal proceedings, Mr.

Ramirez facing this possibility is a legal consequence of the challenged agency action." *Id*. at 7.  Ramirez additionally asserts that "the Court has jurisdiction over Mr. Ramirez's APA claims under 28 U.S.C. § 1331 because Defendants' multiple denials of his I-485 application on the legal basis that Mr. Ramirez was statutorily ineligible to adjust status under 8 U.S.C. § 1255 constitutes final agency action which has resulted in the issuance of a NTA against Mr. Ramirez." *Id*.

Ramirez further argues that "[t]he Court may properly exercise federal question jurisdiction under 28 U.S.C. § 1331 over Mr. Ramirez's case given that the challenged agency action (*i.e.*, the denial of Mr. Ramirez's I-485 application for nondiscretionary reasons) constitutes final agency action for which there is no other alternative adequate judicial remedy available to him until much later." *Id*. at 5 (citation omitted).  Ramirez relatedly asserts that "Mr. Ramirez does challenge final agency action because there is no other court that he can bring the instant action to." *Id*. at 7.  Ramirez avers that "there is no alternative, adequate judicial remedy available to Mr. Ramirez because EOIR [the Executive Office for Immigration Review] and the Board of Immigration Appeals . . . are administrative agencies that lack jurisdiction to consider constitutional due process claims, which are the crux of Mr. Ramirez's causes of action." *Id*. at 8 (citation omitted).  Ramirez also avers that "the Board only has jurisdiction to review an I-485 application denied by EOIR." *Id*. Ramirez asserts "that Defendants' denial of his I-485 application on legal grounds is

- 15 -

sufficiently final because the general existence that 8 U.S.C. § 1255 is the legal mechanism to apply for relief from removal in proceedings is not a remedy available 'as of right' for exhaustion purposes [sic]."[5]  *Id*. at 9.

Finally, while Ramirez urges "the Court to apply 'the strong presumption that Congress intended judicial review of administrative action' to the instant matter," *id*. at 1 (quoting *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986)), he also acknowledges that, "when Defendants finally read and comply with the regulations by actually filing the NTA with the proper immigration court, Mr. Ramirez *will have to file a completely new I-485 application . . . in removal proceedings in order to proceed with his I-485 application anew with an immigration judge*[,]" *id*. at 3 (emphasis added) (citations omitted).

In reply, the government reiterates its argument that "USCIS's decision is not a final agency action since [Ramirez] can renew his request for an adjustment of status in removal proceedings – which have already begun."  Reply in Support of Motion to Dismiss at 1 (citations omitted).  The government further asserts that Ramirez's "arguments ignore the multiple cases from other courts in this district and the Fifth Circuit that have all determined there was no subject-matter jurisdiction

---

[5]      Separately, Ramirez contends that "[t]he APA's finality requirement does not focus on Mr. Ramirez's actions[,]" and that "his ability to adjust status in removal proceedings before a different agency is irrelevant when inquiring whether the denial of his I-485 application marks the consummation of Defendants' decision-making process."  *Id*. at 6 (emphasis omitted).

over claims challenging USCIS's denial of an adjustment of status application, because the ability to renew a request for an adjustment of status in removal proceedings inherently means there is no final agency action within the meaning of the APA." *Id*. at 3-4 (citations omitted).  The government avers that Ramirez "has available administrative remedies to exhaust with respect to his adjustment of status application[,]" and that Ramirez "himself notes that will [sic] have the opportunity to renew his application before an immigration judge." *Id*. at 5 (citing Response to Motion to Dismiss at 3).

Having considered the parties' arguments, as well as the relevant statutes and case law, the court concludes that USCIS's denial of Ramirez's I-485 application does not constitute a final agency action under the APA, and that Ramirez did not exhaust his administrative remedies.  Accordingly, the court concludes that it lacks subject matter jurisdiction over Ramirez's claims.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  A "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,] . . . [or] without observance of procedure required by law[.]" *Id*. § 706(2)(A), (D).  "However, except where provided for by statute, judicial review is

- 17 -

limited to 'final agency action for which there is no other adequate remedy.'" *Puente*, 2021 WL 5326461, at *2 (quoting 5 U.S.C. § 704).

The court notes that, in general, "an I-485 applicant cannot appeal USCIS's denial of their adjustment-of-status application; however, the applicant does 'retain[] the right to renew his or her application' in removal proceedings." *Id.* at *3 (alteration in original) (quoting 8 C.F.R. § 245.2(a)(5)(ii)); see also *Nama v. United States Citizenship and Immigration Services*, 3:20-CV-3362-K, 2022 WL 1189889, at *3 (N.D. Tex. Apr. 21, 2022) (Kinkeade, J.) ("The relevant federal regulation unambiguously provides that an alien, whose application for permanent residence was denied, 'retains the right to renew his . . . application' in removal proceedings.") (quoting 8 C.F.R. § 245.2(a)(5)(ii)).  Per the "regulatory language" that applies to I-485 applicants, "the Fifth Circuit has repeatedly held that an alien may not seek judicial review of the denial of an adjustment of status application outside of the removal process." *Nama*, 2022 WL 1189889, at *3 (citing *Velasquez v. Nielsen*, 754 F. App'x 256, 260-61 (5th Cir. 2018) (per curiam) (unpublished); *Maringo v. Mukasey*, 281 F. App'x 365, 367-68 (5th Cir. 2008) (per curiam) (unpublished); *Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000)); see also *Puente*, 2021 WL 5326461, at *3 (citing *Petrenko-Gunter v. Upchurch*, 2006 WL 2852359, at *1 (5th Cir. 2006) (per curiam) (unpublished); *Cavena v. Renaud*, 2021 WL 2716432, at *1 (N.D. Tex. June 30, 2021) (Kinkeade, J.); *Judhani v. Holder*, 2011 WL 1252661, at *5 (N.D. Tex.

Mar. 9, 2011), *report and rec. adopted*, 3:10-CV-1256-B, 2011 WL 1252605 (N.D.

Tex. Mar. 31, 2011) (Boyle, J.)) ("Though *Cardoso* evaluated the exhaustion of

remedies requirement under 8 U.S.C. § 1252(d) (1999), courts in the Fifth Circuit

have since applied *Cardoso*'s exhaustion principles to challenges of USCIS denials of

adjustment applications brought under the APA.").  Courts within the Fifth Circuit

that have considered challenges to USCIS denials of I-485 applications have thus

concluded that such denials do not constitute final agency actions that are subject to

judicial review under the APA, given that applicants can renew their applications

during removal proceedings.  See, *e.g.*, *Maringo*, 281 Fed. App'x at 367-68 (citations

omitted) ("Maringo is also precluded from seeking review of the district director's

decision because he has failed to exhaust his administrative remedies.  Pursuant to 8

C.F.R. § 245.2(a)(5)(ii), an alien who is denied adjustment of status by the district

director may renew his adjustment of status application upon commencement of

removal proceedings, which constitutes a further mechanism for judicial review.");

*Vargas v. United States Department of Homeland Security*, CV B: 13-21, 2014 WL

12673693, at *11 (S.D. Tex. Jan. 7, 2014) (citation omitted) ("[F]or purposes of the

APA, the denial of the I-485 application – in the procedural posture occupied by

Mejia Vargas – is not a final agency action."), *report and rec. adopted sub nom.*, CV

B-13-021, 2014 WL 12673694 (S.D. Tex. Jan. 31, 2014).

Here, Ramirez "seeks judicial review of Defendants' final decision to deny his Form I-485[.]"  Complaint ¶ 1.  Despite his arguments to the contrary, Ramirez "retains the right to renew his . . . application" during removal proceedings.  8 C.F.R. § 245.2(a)(5)(ii); see *Cardoso*, 216 F.3d at 518 (noting, with respect to an applicant's "request for adjustment of status," that the applicant "may . . . renew her request upon the commencement of removal proceedings.") (citations omitted); *Nama*, 2022 WL 1189889, at *3 ("The relevant federal regulation unambiguously provides that an alien, whose application for permanent residence was denied, 'retains the right to renew his . . .  application' in removal proceedings.") (quoting 8 C.F.R. § 245.2(a)(5)(ii)); *Puente*, 2021 WL 5326461, at *3 ("Generally, an I-485 applicant cannot appeal USCIS's denial of their adjustment-of-status application; however, the applicant does 'retain[] the right to renew his or her application' in removal proceedings.") (quoting 8 C.F.R. § 245.2(a)(5)(ii)).  Therefore, the court concludes that Ramirez has not exhausted his administrative remedies, and that USCIS's denial of Ramirez's I-485 application does not constitute a final agency action subject to judicial review under the APA.  Accordingly, the court further concludes that it does not have subject matter jurisdiction over Ramirez's claims.  See *Nama*, 2022 WL 1189889, at *5 ("Under applicable and binding law of this Circuit, Plaintiff has not yet exhausted his administrative remedies because he may renew his request upon the commencement of removal proceedings . . . [a]ccordingly, this decision of USCIS is

not a final agency action subject to judicial review and the Court may not exercise subject matter jurisdiction over Plaintiff's claims.") (citations and internal quotation marks omitted); *Puente*, 2021 WL 5326461, at *4 ("[T]he Court concludes that, because Puente may renew her application if and when removal proceedings are initiated, USCIS's denial of Puente's adjustment application was not a final agency action under the APA; therefore, Puente has not exhausted her administrative remedies.  Accordingly, the Court lacks subject-matter jurisdiction over Puente's claim.").

The court is unpersuaded by Ramirez's arguments as to why USCIS's denial of his I-485 application constitutes a final agency action subject to judicial review under the APA.  First, while Ramirez contends that "Defendants' three denials of Mr. Ramirez's I-485 application is [sic] final agency action that is [sic] also ripe for judicial review because he has felt the effects of the challenged agency action immediately and in a concrete way[,]" the court is not aware of, and Ramirez does not identify, any precedent that suggests that a USCIS denial of an I-485 application should be subject to judicial review under the APA, despite an applicant's ability to renew their application during removal proceedings, because "the effects" of the denial were felt "immediately and in a concrete way" by the applicant.  Response to Motion to Dismiss at 2 (citation omitted).  The court thus declines to grant judicial review in the instant case based on the effects of USCIS's denial of Ramirez's I-485

application.  See generally *Puente*, 2021 WL 5326461, at \*3-4 (assessing whether
Puente "exhausted her administrative remedies" and concluding that "because Puente
may renew her application if and when removal proceedings are initiated, USCIS's
denial of Puente's adjustment application was not a final agency action under the
APA[]" without discussing the extent to which the effects of USCIS's denial were felt
by the applicant).

Second, with regard to Ramirez's arguments that "[t]he APA's finality
requirement does not focus on whether Mr. Ramirez can apply for adjustment of
status through a different agency[,]" and that, instead, "finality under the APA
focuses on what the agency did . . . that harmed Mr. Ramirez[,]" the court is not
aware of, and Ramirez does not identify, any precedent that supports this argument.
Response to Motion to Dismiss at 6-7; see also *id*. at 7 ("Mr. Ramirez does challenge
final agency action because there is no other court that he can bring the instant
action to.").  Therefore, "[t]here is simply no basis in the law for the [c]ourt to
determine USCIS's decision is a 'final agency action' on this theory."  *Nama*, 2022
WL 1189889, at \*4 (rejecting the plaintiff's argument that "even if the decision is
reviewable in removal proceedings, USCIS . . . is separate from the Immigration
Courts . . . which adjudicates removal proceedings, leaving Plaintiff with 'no further
recourse before USCIS or any other component of the Department of Homeland
Security[.]'") (citation omitted).

- 22 -

Third, regarding Ramirez's assertion that "[t]he Court may properly exercise federal question jurisdiction under 28 U.S.C. § 1331 over Mr. Ramirez's case given that the challenged agency action . . . constitutes final agency action for which there is no other alternative adequate judicial remedy available to him until much later[,]" Response to Motion to Dismiss at 5 (citation omitted), the Fifth Circuit has noted that it previously "held that [an applicant] could not challenge [an] immigration judge's decision to deny her request for adjustment of status in the federal district court, but *must instead wait to do so if and when removal proceedings were commenced*[,]" *Velasquez*, 754 F. App'x at 261 (emphasis added) (citing *Cardoso*, 216 F.3d at 517-18). The court thus concludes that the time between USCIS's denial of Ramirez's I-485 application and his opportunity to renew his application during removal proceedings does not affect the court's determination as to USCIS's denial not being subject to judicial review under the APA.

Finally, Ramirez's averments as to the lack of an "alternative, adequate judicial remedy[,]" Response to Motion to Dismiss at 8, are unavailing in light of the Fifth Circuit case law that confirms that I-485 applicants like Ramirez may renew their applications during removal proceedings. See *Cardoso*, 216 F.3d at 518; *Nama*, 2022 WL 1189889, at *3; *Puente*, 2021 WL 5326461, at *3. Such case law also makes clear that, "[g]enerally, an I-485 applicant cannot appeal USCIS's denial of their adjustment-of-status application[.]" *Puente*, 2021 WL 5326461, at *3 (citing 8

C.F.R. § 245.2(a)(5)(ii)); see also *Velasquez*, 754 F. App'x at 260-61 ("Our precedent makes clear that the district courts do not have jurisdiction to review a denial of adjustment of status, regardless of whether that denial is based on discretionary factors, and regardless of whether it comes in the context of removal proceedings.").

Based on the foregoing, the court concludes that USCIS's denial of Ramirez's I-485 application does not constitute a final agency action under the APA, and that Ramirez did not exhaust his administrative remedies.  Accordingly, the court concludes that it lacks subject matter jurisdiction over Ramirez's claims.

    2.  <u>The Immigration & Nationality Act & Subject Matter Jurisdiction</u>

Assuming *arguendo* that USCIS's denial of Ramirez's I-485 application does constitute a final agency action subject to judicial review under the APA, the court turns to the government's argument that the INA strips jurisdiction over Ramirez's claims.

The government argues that "the INA repeatedly states that USCIS decisions like those at issue[] in this case are left to the agency's discretion and are not subject to judicial review," and that, accordingly, "the Court does not have subject-matter jurisdiction over Ramirez Garcia's claims."  Motion to Dismiss at 12-13 (citations omitted).  More specifically, the government asserts that "[i]n the INA, Congress explicitly barred judicial review of USCIS's determinations regarding an application for an adjustment of status[.]"  *Id*. at 13 (citing 8 U.S.C. § 1252(a)(2)(B)(i)).  In

addition, the government contends that, "[i]n cases involving challenges to these adjustment of status decisions under 8 U.S.C. § 1255(a), both the Fifth Circuit and courts in this district have repeatedly held that USCIS's discretionary decisions of adjustment of status applications are non-reviewable under 8 U.S.C. § 1252(a)(2)(B)(i)." *Id*. at 13-14 (citations omitted).  The government further contends that "8 U.S.C. § 1252(a)(2)(B)(i) also explicitly precludes judicial review over Ramirez Garcia's claims under either the mandamus statute (28 U.S.C. § 1361) or the All Writs Act (28 U.S.C. § 1651), two other asserted grounds for jurisdiction in this case." *Id*. at 14 (citations omitted).

The government contends that "questions of fact – as opposed to legal conclusions or questions of law – are not subject to review." *Id*. at 13.  The government relatedly argues that "USCIS's denial of Ramirez Garcia's application for adjustment of status was based on a question of fact – that is, whether Ramirez Garcia was admitted to the United States in the manner he claimed he was – and thus entirely discretionary." *Id*. at 15.  The government avers that "USCIS's December 2, 2020 decision letter stated[] [that] Ramirez Garcia's 'affidavit and testimony at the time of interview detail two vastly different admission scenarios; therefore, you have not presented a credible record of your claimed admission into the United States[,]'" and that "Ramirez Garcia's challenges to USCIS's denial of his adjustment of status application amounts [sic] to a disagreement with how USCIS

- 25 -

weighed the facts of his case, not USCIS's legal conclusions." *Id.* (citations omitted). The government asserts that "USCIS used its discretion pursuant to 8 U.S.C. § 1255(a) to determine that Ramirez Garcia's explanations as how he was admitted into the United States were not credible, and therefore did not demonstrate that his entry to the United States was procedurally regular such that he had established that he had been inspected and admitted into the country." *Id.* Based on this, the government argues, "USCIS denied [Ramirez's] Form I-485 application[,]" and "8 U.S.C. § 1252(a)(2)(B)(i) bars judicial review of such discretionary denials." *Id.*

In response, Ramirez "opposes Defendants' Motion To Dismiss Plaintiff's Complaint because jurisdiction exists over the instant matter pursuant to 28 U.S.C. § 1331 (federal questions jurisdiction) and 28 U.S.C. § 1361 (mandamus jurisdiction)[]" and avers that he seeks to "challenge[] the legal standards Defendants applied in denying his I-485 application on the grounds that he was statutorily ineligible for adjustment of status under 8 U.S.C. § 1255(a)." Response to Motion to Dismiss at 1, 2 (citation omitted). Ramirez also avers that "the denial of Mr. Ramirez's I-485 application [was] for nondiscretionary reasons[.]" *Id.* at 5 (citation omitted).

In addition, Ramirez argues that "Defendants misinterpret § 1252 as applying to all actions arising from the Immigration and Nationality Act . . . which is simply incorrect and not supported by the law[,]" and that "if an action does not arise from,

or is remotely or attenuated connected [sic] to, the removal proceedings of the

plaintiff, then 8 U.S.C. § 1252 does not apply." *Id*. at 4 (citations omitted).  To that

end, Ramirez avers that he "does challenge final agency action that he cannot bring

before any other federal court for judicial review of the instant action because it did

not arise from removal proceedings." *Id*. at 8 (emphasis omitted) (citing *McNary*,

498 U.S. at 486; *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018), *cert. denied*, __

U.S. __, 139 S.Ct. 1179 (2019)).  Ramirez relatedly "maintains that he does not have

the right to ask the federal government to place him in removal proceedings much

less ask EOIR to file the NTA[]" and "contends that the instant matter is remotely

connected to the removal of Mr. Ramirez since the challenged agency action has

nothing to do with removal proceedings." *Id*. at 9 (citing *Duron*, 898 F.3d at 647).

Ramirez further "argues that Defendants . . . misconstrue the law in terms of the

application of the exhaustion of administrative remedies requirement under 8 U.S.C.

§ 1252(d), which only applies in the context of removal proceedings as discussed

previously such that the remedy Defendants contend is available to Mr. Ramirez 'as

of right' is simply not true." *Id*. at 8 (citing *Omari v. Holder*, 562 F.3d 314, 318-19

(5th Cir. 2009)).  "In this case," Ramirez contends, "no remedy is available 'as of

right' to Mr. Ramirez, within the meaning of § 1252(d), because he cannot bring the

causes of actions he complains of – Defendants' denial of his I-485 application – since

the Board lacks jurisdiction over such denials." *Id*. at 9 (citation omitted).

In reply, the government reiterates its argument that "as part of the Immigration and Nationality Act . . . Congress has explicitly barred courts from reviewing USCIS's discretionary decisions regarding adjustment of status applications."  Reply in Support of Motion to Dismiss at 2 (citing 8 U.S.C. §§ 1252(a)(2)(B)(i), 1255(a); *Ayanbadejo v. Chertoff*, 517 F.3d 273, 276-77 (5th Cir. 2008) (per curiam)).  The government further asserts that Ramirez's "arguments . . . ignore both the plain language of 8 U.S.C. § 1252 and the actual dispute in this case." *Id*. at 5.  The government avers that, "[d]espite Ramirez Garcia's limited attempts to argue otherwise, the fact remains that USCIS inherently has discretion under federal law to approve or deny an adjustment of status application, and it exercised this discretion when denying Ramirez Garcia's application[,]" and that, "[a]ccordingly, Ramirez Garcia's claims are statutorily barred by the APA and the INA." *Id*. (citations omitted).  The government also contends that "[t]he recent *Puente* case decided by another court in this district provides a helpful framework to distinguish between USCIS's discretionary and nondiscretionary decisions regarding adjustment of status applications[,]" and that the "analysis from *Puente* applies to this instant case." *Id*. at 6, 7.  More specifically, the government argues that "Ramirez Garcia asserts that USCIS's denial was completely based on a legal determination that he was ineligible to adjust his status, and thus it was a nondiscretionary decision subject to judicial review[,]" but that "as Ramirez Garcia himself explains, he kept

submitting evidence to USCIS 'to prove his procedurally regular entry' to the United States[,]" and, "thus, there was clearly a critical factual dispute at issue regarding his application:  how exactly Ramirez Garcia entered the country."  *Id*. at 7 (citations omitted).  "Just as in *Puente*," the government asserts, "Ramirez Garcia's application was not denied because his entrance to the United States rendered him ineligible for adjustment of status, but the denial was instead based on USCIS's factual determination that Ramirez Garcia did not arrive in the United States in the manner he described."  *Id*. (citing *Puente*, 2021 WL 5326461, at *5).  The government contends that "[t]he real issue in this case is not how USCIS applied the legal standards to determine Ramirez Garcia's eligibility, but rather . . . a factual dispute[,]" *id*., and that "Ramirez Garcia does not agree with how the agency weighed his evidence, but 'to say that . . . USCIS improperly weighed evidence is to say that . . . [it] abused its discretion to review the evidence, but an abuse of discretion remains an exercise of discretion all the same[,]'" *id*. at 7-8 (alteration in original) (quoting *Puente*, 2021 WL 5326461, at *6).

Having considered the parties' arguments, as well as the evidence cited therein and relevant statutes and case law, the court concludes that it is barred from reviewing USCIS's denial of Ramirez's I-485 application by 8 U.S.C. § 1252(a)(2)(B)(i).

Under 8 U.S.C. § 1255(a), "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]"  8 U.S.C. § 1252(a)(2)(B)(i) in turn provides that, "[n]otwithstanding any other provision of law (statutory or nonstatutory) . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [8 U.S.C. §] 1255 [adjustment of status of nonimmigrant to that of person admitted for permanent residence] of this title[.]"  "Interpreting these statu[t]es, the Fifth Circuit has held that § 1252(a)(2)(B)(i) precludes judicial review of 'certain discretionary immigration decisions,' but 'nondiscretionary decisions, such as statutory interpretation and other pure legal task[s]' may still be reviewed."  *Puente*, 2021 WL 5326461, at *4 (quoting *Nolasco v. Crockett*, 978 F.3d 955, 957 (5th Cir. 2020)); see *Melendez v. McAleenan*, 928 F.3d 425, 426 (5th Cir.) ("Section 1252(a)(2)(B)(i) strips federal courts of jurisdiction to review 'any judgment regarding the granting of relief under,' among others, Section 1255, which is the statute applicable to an adjustment of status."), *cert. denied*, __ U.S. __, 140 S.Ct. 561 (2019)); *Ayanbadejo*, 517 F.3d at 277 ("[A]ll judgments regarding relief under § 1255, including reviews of I-485 applications, are specifically categorized as discretionary

and non-reviewable by § 1252(a)(2)(B)(i)").  "Therefore, the issue presented is

whether [Ramirez] seeks review of discretionary decisions made unreviewable by

§ 1252(a)(2)(B)."  *Puente*, 2021 WL 5326461, at *4.

Here, Ramirez sought to adjust his status to that of a lawful permanent

resident through an I-485 application in accordance with 8 U.S.C. § 1255(a).  *See*

Complaint ¶¶ 16, 18.  USCIS denied Ramirez's application on December 2, 2020,

and in doing so stated that the reason for its denial was that Ramirez "ha[d] not

established that [he] w[as] inspected and admitted or inspected and paroled into the

United States."  *Id*., Exhibits, Denial of Ramirez's I-485 Application at 56.  USCIS

elaborated that Ramirez had "indicated on [his] Form 1-485 that [his] last entry into

the United States was at Laredo, TX on or about 2000[,]" but that "there are no

Department of Homeland Security (DHS) records to support [his] claim."  *Id*.,

Exhibits, Denial of Ramirez's I-485 Application at 57.  USCIS further wrote that

Ramirez, "submitted an affidavit stating [he] w[as] given voluntary departure on June

10, 1999 back to Mexico, . . . returned to the United States by entering at the Port of

Entry in Laredo, Texas by boarding a U.S. bound bus early in the morning[,]" and

that, "at the time of entry the Border Patrol Officer did not request to see

immigration documents and waved the bus through the port of entry."  *Id*.  "In

contrast," USCIS stated, "according to [Ramirez's] testimony during the course of

[his] interview, [he] stated [he] w[as] with a friend . . . in Mexico, who was heading

home back to the United States[,]" and that, per Ramirez's testimony, Ramirez and the friend "showed up at the bridge[,] [t]wo white males asked where [they] were . . . going[,]" the "friend . . . said, '[h]ome[,]' [t]he white male officer asked [Ramirez's] friend . . . '[a]re they with you[,]'" the friend "said, '[y]es[,]'" and "[t]hen . . . the officers waved [Ramirez] through." *Id*. USCIS wrote in its denial that Ramirez's "affidavit and testimony at the time of interview detail two vastly different admission scenarios[,]" and that, "therefore, [Ramirez] ha[d] not presented a credible record of [his] claimed admission into the United States." *Id*. "Because [Ramirez] ha[d] not established that [he] w[as] inspected and admitted or inspected and paroled, or that [he] [was] exempt from that requirement," USCIS stated that Ramirez was "ineligible to adjust status in the United States." *Id*.

The court concurs with the government's argument that Ramirez's application resembles the application that was considered in *Puente*. There, "[i]n 2019 . . . Puente filed an I-485 Application to Register Permanent Residence or Adjust Status . . . pursuant to § 245(a) of the Immigration and Nationality Act[.]" *Puente*, 2021 WL 5326461, at *1 (citation omitted). "In or about January 2021, USCIS denied Puente's application on the ground that she was ineligible for adjustment of status because 'she was not inspected and admitted upon entry to the United States.'" *Id*. at *2 (citation omitted). After considering this application, the *Puente* court stated that "Puente's application . . . was denied on an eligibility ground." *Id*. at *5

(citation omitted).  More specifically, it observed that USCIS's denial of Puente's application stated, "[b]ecause you have not proven that you were inspected and admitted or paroled, or that you are exempt from that requirement, you are ineligible to adjust status in the United States."  *Id*. (citation omitted).  Similarly, in USCIS's denial of Ramirez's I-485 application, it wrote to Ramirez that, "[b]ecause you have not established that you were inspected and admitted or inspected and paroled, or that you are exempt from that requirement, you are ineligible to adjust status in the United States."  Complaint, Exhibits, Denial of Ramirez's I-485 Application at 57.  In *Puente*, the court noted that "USCIS's denial letter, attached to Puente's complaint, states:  'In your case, the basic facts are in dispute.  The record does not include sufficient evidence that you were inspected, admitted or paroled to the United States.'"  2021 WL 5326461, at *5 (citation omitted).  Likewise, in the instant case, USCIS considered "an affidavit" that Ramirez submitted, in addition to his "testimony during the course of [his] interview," before concluding that Ramirez's "affidavit and testimony at the time of interview detail two vastly different admission scenarios[.]"  Complaint, Exhibits, Denial of Ramirez's I-485 Application at 57.  Based on this conclusion, USCIS stated that Ramirez "ha[d] not presented a credible record of [his] claimed admission into the United States."  *Id*.  Similar to the facts before the *Puente* court, "USCIS's denial [of Ramirez's I-485 application] was based on its factual determination that [Ramirez] did not arrive in the United States in the

- 33 -

manner [he] described." *Puente*, 2021 WL 5326461, at *5 (citation omitted).  The court agrees with the *Puente* court's conclusion that "[r]eviewing this determination is not the sort of 'pure legal task' the Fifth Circuit has found reviewable." *Id.* (quoting *Nolasco*, 978 F.3d at 957); see also *id.* at *6 (quoting *Ayanbadejo*, 517 F.3d at 277) ("Like USCIS's determination that the *Ayanbadejo* plaintiff did not have a bona fide marriage, USCIS's determination here that Puente was not inspected and admitted or paroled into the United States is a 'judgment regarding the granting of relief under . . . section 1255,' which the Court has no jurisdiction to review.").

Ramirez's arguments to the contrary are unavailing.  First, Ramirez's assertion that he is only "challeng[ing] the legal standards Defendants applied in denying his I-485 application[,]" Response to Motion to Dismiss at 2 (citation omitted), is unpersuasive because the Fifth Circuit has made clear that "Section 1252(a)(2)(B)(i) explicitly places 'any judgment regarding the granting of relief under . . . section 1255,' which provides the statutory authority for I-485 applications, in th[e] category of discretionary decisions that no courts have jurisdiction to review[,]" *Ayanbadejo*, 517 F.3d at 277.  See also *Puente*, 2021 WL 5326461, at *4 (concluding, after considering the plaintiff's contention "that she seeks review of only legal determinations," as well as USCIS's averment that "Puente's challenges 'amount to a disagreement with how USCIS weighed the facts of her case,'" that "Puente seeks review of only discretionary assessments of fact.").  In addition, Ramirez's contention

that, "if an action does not arise from, or is remotely or attenuated connected [sic] to, the removal proceedings of the plaintiff, then 8 U.S.C. § 1252 does not apply[,]" Response to Motion to Dismiss at 4 (citation omitted),  is unsupported by the plain language of 8 U.S.C. § 1252(a)(2)(B) and Fifth Circuit case law.  *See* 8 U.S.C. § 1252(a)(2)(B) (emphasis added) ("[n]otwithstanding any other provision of law . . . and except as provided in subparagraph (D) [excepting certain legal claims filed with courts of appeals in accordance with statutory guidelines], and *regardless of whether the judgment, decision, or action is made in removal proceedings*, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title[]"); *Nama*, 2022 WL 1189889, at *6 (citing *Ayanbadejo*, 517 F.3d at 277) (concluding, in a "case [that] does not involve removal proceedings[,]" that the court was "without jurisdiction to review the discretionary decision of USCIS to deny Plaintiff's application to adjust his status"); *Puente*, 2021 WL 5326461, at *2, *6 (citation omitted) (stating, in a case in which "[t]o date, no removal proceedings have been initiated[,]" that, "because USCIS's determination was discretionary, the Court is barred from reviewing it by § 1252(a)(2)(B).").[6]  Therefore, the court concludes

---

[6]     The court further notes the Supreme Court's recent decision in *Patel v. Garland*, __ U.S. __, 142 S.Ct. 1614 (2022).  In *Patel*, the Supreme Court considered "how far th[e] bar" set by Congress on "judicial review of the Attorney General's decisions denying discretionary relief from removal . . . extends – specifically, whether it precludes judicial review of factual findings that underlie a denial of relief."  *Id.* at 1618.  Turning to the aforementioned statutory bar, the Supreme Court stated that

(continued...)

that it is barred from reviewing USCIS's denial of Ramirez's I-485 application by 8

U.S.C. § 1252(a)(2)(B)(i) and lacks jurisdiction over Ramirez's claims.[7]  See *Nama*,

---

[6](...continued)
"Congress has sharply circumscribed judicial review of the discretionary-relief process[]" before discussing what "Title 8 U.S.C. § 1252(a)(2)(B) provides[.]" *Id*. at 1619.  In seeking "to resolve the conflict[]" regarding "a split among the courts of appeals as to the scope of § 1252(a)(2)(B)(i)[,]" the Supreme Court assessed arguments from the government, Patel, and *amicus curiae*.  *Id.* at 1621.

The Supreme Court determined that "[*a*]*micus*' interpretation is the only one that fits § 1252(a)(2)(B)(i)'s text and context[,]" and that "[t]he provision does not restrict itself to certain kinds of decisions[]":  "[r]ather, it prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions."  *Id*. at 1622 (emphasis in original).  "Thus, § 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' but also any judgment *relating* to the granting of relief[,] [which] plainly includes factual findings."  *Id*. (emphasis in original).  The Supreme Court went on to consider one of its earlier decisions, *Nasrallah v. Barr*, 590 U. S. __, 140 S.Ct. 1683 (2020), and stated that it "adhere[d] to th[e] view today[,]" expressed in *Nasrallah*, that "a noncitizen 'may not bring a factual challenge to orders denying discretionary relief, including . . . adjustment of status.'"  *Id*. at 1623 (quoting *Nasrallah*, 140 S.Ct. at 1694).  While the Supreme Court also acknowledged that "[t]he reviewability of [certain] decisions[,]" *i.e.*, "USCIS denials of discretionary relief[,] . . . is not before us, and we do not decide it[,]" it also noted that "it is possible that Congress did, in fact, intend to close that door."  *Id*. at 1626.  The Supreme Court concluded that "the text and context of § 1252(a)(2)(B)(i) – which is, after all, a jurisdiction-stripping statute – clearly indicate that judicial review of fact determinations is precluded in the discretionary-relief context."  *Id*. at 1627.

While the Supreme Court did "not decide" on the "reviewability" of the type of decision at issue in the instant case, its analysis and conclusion support the court's application of 8 U.S.C. § 1252(a)(2)(B)(i).  *Id*. at 1626; see also *Bertrand v. Garland*, 36 F.4th 627, 631 n.4 (5th Cir. 2022) (quoting *Patel*, __ U.S. __, 142 S.Ct. at 1618, 1622-23) ("The Supreme Court has recently emphasized the 'very limited role' for courts of appeals in reviewing the Attorney General's discretionary-relief decisions.").

[7]          The Fifth Circuit's recent decision in *Duarte v. Mayorkas*, 27 F.4th 1044
(continued...)

---

[7](...continued)
(5th Cir. 2022), does not alter this conclusion.  There, the Fifth Circuit considered a situation in which a group of immigrants who were ordered to be deported from the United States were granted Temporary Protected Status and, "later . . . 'advance parole' documents . . . that authorized them to temporarily travel abroad." *Id*. at 1048.  After the group of immigrants returned to the United States, they filed I-485 applications, and "USCIS administratively closed the Appellants' cases, finding that it lacked jurisdiction because, notwithstanding their recent readmittance to the country, the Appellants were not 'arriving aliens' within the meaning of the relevant regulations." *Id*.  The group of immigrants "each brought suit in federal district court challenging USCIS's decision as arbitrary and capricious[,]" and, after judges in three of four cases "concluded that [they] lacked jurisdiction to hear the challenge because the Appellants were indirectly attacking their respective deportation orders[,]" the Fifth Circuit "h[e]ld that the Appellants' claims are not indirect challenges to their deportation orders[]" and reversed "the district courts that dismissed the Appellants' cases for lack of subject matter jurisdiction." *Id*. at 1048-49.

   The Fifth Circuit in *Duarte* primarily considered 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g), rather than 8 U.S.C. § 1252(a)(2)(B)(i), which applies in this case.  See *id*. at 1050-52, 1054-57 (discussing the "provisions of 8 U.S.C. § 1252 at issue here, [including] § 1252(a)(5) and (b)(9)[]").  Further, while the Fifth Circuit "conclude[d] that the district courts erred by determining that they lacked jurisdiction over the Appellants' claims[]" "because the relief the Appellants seek would not directly or indirectly invalidate their deportation orders and they have no other ready avenue of obtaining judicial review," *id*. at 1057, in contrast Ramirez "retains the right to renew his . . . application in proceedings under 8 CFR part 240[,]" 8 C.F.R. § 245.2(a)(5)(iii).  See also *Nama*, 2022 WL 1189889, at *3 ("The relevant federal regulation unambiguously provides that an alien, whose application for permanent residence was denied, 'retains the right to renew his . . . application' in removal proceedings.") (quoting 8 C.F.R. § 245.2(a)(5)(iii)).  In addition, while the Fifth Circuit did not assess 8 U.S.C. § 1252(a)(2)(B)(i) to the same extent it analyzed other provisions of 8 U.S.C. § 1252, the court notes the Fifth Circuit's discussion of one of its previous holdings that "8 U.S.C. § 1252(a)(2)(B)(i) 'applies only to discretionary decisions.'"  *Duarte*, 27 F.4th at 1055 (quoting *Melendez*, 928 F.3d at 426).  Given that the instant case concerns a discretionary decision, the court concludes that *Duarte* does not alter the court's determination as to the applicability of 8 U.S.C. § 1252(a)(2)(B)(i). See *Ayanbadejo*, 517 F.3d at 277 (citation omitted)

(continued...)

- 37 -

2022 WL 1189889, at *6 (citing 8 U.S.C. § 1255(a); *Ayanbadejo*, 517 F.3d at 277)

("The Court is not persuaded by any of Plaintiff's arguments that USCIS's decision

denying his I-485 application for adjustment of status was not discretionary and is

subject to judicial review . . . [b]ased on the clear law, this Court is without

jurisdiction to review the discretionary decision of USCIS to deny Plaintiff's

application to adjust his status (*i.e.*, an I-485 application).").

> 3.  <u>Whether Ramirez has Identified an Alternative Basis
>       for Subject Matter Jurisdiction</u>

Having determined that USCIS's denial of Ramirez's I-485 application does

not constitute a final agency action under the APA that is subject to judicial review,

and that the court is also barred from reviewing USCIS's decision by 8 U.S.C.

§ 1252(a)(2)(B)(i), the court turns to the question of whether Ramirez has identified

a viable, alternative source on which jurisdiction can be based.  More specifically, the

court considers Ramirez's assertion that "[t]his Court has jurisdiction pursuant to 28

U.S.C. § 1331 (federal question jurisdiction[)]; 28 U.S.C. § 1651 (the All Writs Act);

and 28 U.S.C. § 1361 (jurisdiction over mandamus actions)."  Complaint ¶ 6.

The government argues that "none of those statutes – 28 U.S.C. § 1331

(federal question jurisdiction), 28 U.S.C. § 1361 (the mandamus statute), and 28

---

[7](...continued)
("The law makes clear that we and the district court lack jurisdiction over
determinations made with respect to an I-485 application for permanent resident
status under § 1255.").

U.S.C. § 1651 (the All Writs Act) – provide an independent basis for jurisdiction in this case."  Motion to Dismiss at 16.  The government reiterates its averment that "the INA explicitly bars judicial review of USCIS's decisions on adjustment of status applications under either the mandamus statute or the All Writs Act, and its general preclusion of judicial review also means that 'the Court cannot exercise federal question jurisdiction.'"  *Id.* (citations omitted).  The government further asserts that "the mandamus statute does not apply as 'mandamus is not available to review the discretionary acts of officials,' and as described above, USCIS's denial of Ramirez Garcia's application was a discretionary act."  *Id.* (quoting *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992)).  "In addition," the government contends, "neither the All Writs Act nor Section 1331 . . . provide an independent basis for subject-matter jurisdiction absent some additional authority waiving sovereign immunity, such as the APA."  *Id.* (citations omitted).

In response, Ramirez argues that "subject-matter jurisdiction exists over the causes of action Mr. Ramirez complains of[,]" and that, "[i]n particular, the Court has federal question jurisdiction under 28 U.S.C. § 1331 over Mr. Ramirez's first and second claims, which he asserts pursuant to the APA . . . [and] mandamus jurisdiction under 28 U.S.C. § 1361 over Mr. Ramirez's third claim."  Response to Motion to Dismiss at 9-10.  Ramirez contends that "the Court has federal question jurisdiction over Mr. Ramirez's APA claim which centers on Defendants'

interpretation and application of 8 C.F.R. § 103.2(b)(2)." *Id*. at 2 (citation omitted). As is discussed previously, Ramirez also avers that "[t]he Court may properly exercise federal question jurisdiction under 28 U.S.C. § 1331 over Mr. Ramirez's case given that the challenged agency action . . . constitutes final agency action for which there is no other alternative adequate judicial remedy available to him until much later." *Id*. at 5 (citation omitted).  Ramirez does not mention the All Writs Act or assert that it provides subject matter jurisdiction in his response to the government's motion to dismiss.  See generally *id*.

In reply, the government argues that "neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1361 provide a basis for jurisdiction in this action given USCIS's discretionary actions and the INA's bar on judicial review."  Reply in Support of Motion to Dismiss at 2 (citations omitted).  The government restates its contentions that "the APA is inapplicable where 'statutes preclude judicial review; or agency action is committed to agency discretion by law[,]' . . . [t]he INA explicitly bars judicial review of USCIS's decisions on adjustment of status application[,]" and, because "USCIS's decisions on these applications are also committed to the agency's discretion by law[,] . . . [t]hus, the APA cannot provide jurisdiction in this case, as needed for the required waiver of sovereign immunity for the Court to have jurisdiction under 28 U.S.C. § 1331." *Id*. at 8-9 (citations omitted).  Further, the government avers that "the general preclusion of judicial review under the INA also means that 'the Court

- 40 -

cannot exercise federal question jurisdiction[,]'" and that "[a]s a result, the invocation of 28 U.S.C. § 1331 does not provide jurisdiction over Ramirez Garcia's claims, either on its own or in connection with the APA."  *Id*. at 9 (citation omitted). In addition, the government asserts that "[t]he plain language of the INA states that 28 U.S.C. § 1361 does not provide jurisdiction to review USCIS's decisions under 8 U.S.C. § 1255."  *Id*. (citing 8 U.S.C. § 1252(a)(2)(B)(i)).  Because "USCIS's denial of Ramirez Garcia's application was a discretionary decision, and the mandamus statute does not apply 'to review the discretionary acts of officials[,]'" the government argues that "28 U.S.C. § 1361 also fails to provide jurisdiction for Ramirez Garcia's claims." *Id*. (quoting *Giddings*, 979 F.2d at 1108).

Having considered the parties' arguments, as well as the relevant statutes and case law, the court concludes that none of the statutes cited by Ramirez provides the court with jurisdiction over his claims.

With respect to federal question jurisdiction, courts "do[] not have subject matter jurisdiction under 28 U.S.C. § 1331[]" in this context "because the statutes specifically divest courts of jurisdiction to review these discretionary determinations." *Nama*, 2022 WL 1189889, at *6 (citing 8 U.S.C. §§ 1182(i), 1252(a)(2)(B)); *see* 8 U.S.C. § 1252(a)(2)(B) (emphasis added) ("Notwithstanding *any other provision of law* (statutory or nonstatutory), . . . and except as provided in subparagraph (D), . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of

relief under section . . . 1255 of this title[]") (emphasis added).  In addition, as to the

All Writs Act, the court notes that, "[a]lthough the Supreme Court has held that the

All Writs Act may authorize a court to issue commands 'as may be necessary or

appropriate to effectuate and prevent the frustration of orders it has previously issued

in its exercise of jurisdiction otherwise obtained,' . . . almost 200 years of Supreme

Court precedent establishes that the Act . . . cannot serve as an *independent* basis of

jurisdiction."  *Texas v. Real Parties In Interest*, 259 F.3d 387, 392 (5th Cir. 2001)

(emphasis in original) (citations omitted), *cert. denied*, *Umphrey v. Texas*, 534 U.S.

1115 (2002).  "Accordingly," the Fifth Circuit "has similarly held that 'section

1651(a) is not an independent grant of jurisdiction.'"  *Id.* (quoting *In re McBryde*, 117

F.3d 208, 220 (5th Cir. 1997), *cert. denied*, *Judicial Council of Fifth Judicial Circuit v.

McBryde*, 524 U.S. 937 (1998)).  Finally, regarding mandamus jurisdiction, Congress

provided in 8 U.S.C. § 1252(a)(2)(B) that, "[n]otwithstanding any other provision of

law . . . including section 2241 of Title 28, or . . . section[] 1361 [the mandamus

statute] . . . of such title, . . . no court shall have jurisdiction to review . . . any

judgment regarding the granting of relief under section . . . 1255 of this title[.]"

Moreover, "mandamus is not available to review the discretionary acts of officials."

*Giddings*, 979 F.2d at 1108 (citing *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir.

1984)).

With regard to the instant case, the court concurs with the *Puente* court, which considered a plaintiff's complaint that "cite[d] to, as alternative bases of jurisdiction, . . . 28 U.S.C. § 1651 . . . 28 U.S.C. § 1361 . . . and 28 U.S.C. § 1331[.]" *Puente*, 2021 WL 5326461, at *6. "First . . . the All Writs Act [does not] provide an independent basis for subject matter jurisdiction." *Id.* (quoting *Parveen v. McAleenan*, 410 F. Supp. 3d 809, 815 (S.D. Tex. Oct. 18, 2019)).[8] "Second, the mandamus statute does not apply because 'mandamus is not available to review the discretionary acts of officials,' and as explained above, [Ramirez] challenges only USCIS's discretionary determinations." *Id.* (quoting *Giddings*, 979 F.2d at 1108). "And third, the Court cannot exercise federal question jurisdiction because, as explained above, § 1252(a)[(2)](B)(i) precludes judicial review." *Id.* (citing *Parveen*, 410 F. Supp. 3d at 816). Therefore, the court concludes that none of the statutes cited by Ramirez provide the court with jurisdiction over his claims.[9]

---

[8]    Moreover, because Ramirez fails to respond to the government's arguments regarding the inapplicability of the All Writs Act in this case, *see generally* Response to Motion to Dismiss, the court concludes that this issue has been waived or abandoned, see *Arkansas v. Wilmington Trust National Association*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level.") (citing *Black v. North Panola School District*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Kellam v. Services*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) (Solis, J.), *aff'd sub nom.*, *Kellam v. Metrocare Services*, 560 F. App'x 360 (5th Cir. 2014) (per curiam) (unpublished)).

[9]    The court notes that Ramirez avers that USCIS's denial of his I-485 was
(continued...)

- 43 -

III.  CONCLUSION

For the reasons stated above, the government's Rule 12(b)(1) motion to

dismiss is **GRANTED**.  A judgment of dismissal without prejudice will be entered

separately.

---

[9](...continued)
a violation of the Due Process Clause of the Fifth Amendment.  Complaint ¶ 1.
However, Ramirez does not assert a due process claim.  See *id.* ¶¶ 45-61 (detailing
three claims for relief, including "First Cause of Action – Administrative Procedure
Act (Violation of Notice and Comment Provision)[,]" "Second Cause of Action –
Administrative Procedure Act (Arbitrary and Capricious)[,]" and "Third Cause of
Action – Mandamus Act (Agency Decision Unwarranted by Facts)").  Assuming
*arguendo* that Ramirez is attempting to assert a due process claim, the court arguably
"has subject matter jurisdiction over Plaintiff's Fifth Amendment due process claim
because it involves a question arising under the United States Constitution."
*Vasylchenko v. United States Citizenship & Immigration Services*, No. 3:21-CV-2815-S,
2022 WL 2953018, at *3 (N.D. Tex. July 25, 2022) (Scholer, J.) (citing 28 U.S.C. §
1331).  However, "[t]he Fifth Circuit has held that adjustment of status and interests
related to these proceedings are not protected liberty interests that can support a due
process claim."  *Id.* (citing *Mendias-Mendoza v. Sessions*, 877 F.3d 223, 228 (5th Cir.
2017); *Nyika v. Holder*, 571 F. App'x 351, 352 (5th Cir. 2014) (per curiam)
(unpublished); *Ohiri v. Gonzales*, 233 F. App'x 354, 356 (5th Cir. 2007) (per curiam)
(unpublished)); see also *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004)(per
curiam) (citation omitted) ("[T]he failure to receive relief that is purely discretionary
in nature does not amount to a deprivation of a liberty interest.").  Moreover, given
that Ramirez has failed to exhaust his administrative remedies, to the extent that
Ramirez attempts to assert a due process claim, the court dismisses such a claim.
*Vasylchenko*, 2022 WL 2953018, at *3; *see* 8 U.S.C. § 1252(a)(2)(D) (emphasis
added) ("Nothing in subparagraph (B) or (C), or in any other provision of this
chapter (other than this section) which limits or eliminates judicial review, shall be
construed as precluding review of constitutional claims or questions of law raised
upon a petition for review *filed with an appropriate court of appeals in accordance with this
section*."); *Jefferally v. Barr*, No. CV H-19-1244, 2019 WL 3935977, at *2 (S.D. Tex.
Aug. 20, 2019) (citation omitted) ("Subject-matter jurisdiction over constitutional
claims and questions of law must be exhausted in the Board of Immigration Appeals
before filing a federal court challenge.").

- 44 -

**SO ORDERED**.

August 12, 2022.

_A. Joe Fish_ _____

A. JOE FISH
**Senior United States District Judge**